In Re: John Doe

vs LL 06-30

Cranston School District

ADMINISTRATIVE DECISION

Maureen A. Hobson
Impartial Due Process Hearing Officer

DATED: 11/17/06

HELD: District's obligation is to provide FAPE for student entering 5th grade in the public school. Where parents have proven that child made no educational gains due to district's failure to provide appropriate services, and where proposed program contained no significant changes, parents were justified in making unilateral private school placement.

In Re: John Doe

vs LL 06-30

Cranston School District

## Administrative Decision

This matter was initiated by a complaint brought by the parents against the district alleging that the district had misdiagnosed their son's disability and had failed to provide the supports and services necessary for their child to access a free appropriate public education (hereinafter FAPE). As a result, the parents unilaterally removed their son from the public school in the fall of 2006, and they placed him in a private school program at The Wolf School, a facility presently located in East Providence, Rhode Island.

The parents allege that their son has made little to no academic progress in his public school placement, and, that despite that fact, the District did not undertake any action to modify the student's individual education program (hereinafter IEP). The parents are seeking tuition reimbursement and transportation for their son to attend The Wolf School.

The district has suggested that the student was receiving FAPE in his public school setting, which is the least restrictive environment for the student.

## Review of Evidence and Findings of Fact

The student is a 10 year old boy who entered the 5th grade in the fall of 2006. The student was first identified as having a disability in December 2003, when he was midway through 2nd grade. At that time, the student remained in his regular education

placement under a 504 plan. At the conclusion of that school year, the IEP team determined that the student required a more restrictive placement, so they drafted an IEP wherein the child was placed in a self-contained classroom for the better part of the school day. The self-contained classroom placement persisted for the 3rd and 4th grade and was scheduled to continue in the 5th grade, had the student remained in the district.

As part of their case, the parents have alleged that the district erred in its diagnosis of the student's learning disability. The district has identified that the student suffers form attention deficit hyperactivity disorder (ADHD), a non-verbal learning disability (NLD), anxiety and obsessive compulsive disorder (OCD) symptoms. However, the expert hired by the parents to evaluate their son concluded that he suffers from Asperger's Disorder, a form of autism.

Howard Goldfischer, PhD., testified on behalf of the parents as an expert in pediatric neuropsychology. Dr. Goldfischer testified that in April 2006, he conducted a two day, one to one evaluation of the student, read through his academic record (including teacher commentary) and spoke with the parents. Dr. Goldfischer administered a battery of tests, all of which are specifically set forth in the record of hearing. Dr. Goldfischer noted that prior to his involvement, the student had already been diagnosed with a non-verbal learning disability, ADHD and OCD. Dr. Goldfischer said the student's diagnosis and defined behaviors were a red flag for him. The student's obsessive compulsive repetitive activities, his lack of, or difficulty with, social interactions and communications and his ADHD like behavior caused the doctor to consider Asperger's Disorder. The doctor testified that Asperger's often goes hand in hand with NLD. The doctor did not dispute the NLD determination. In fact, the testing he administered bore it

out. However, he concluded that there was much more going on with the child than social-emotional problems and ADHD. Dr. Goldfischer's diagnosis was NLD and Asperger's. The doctor cited a number of things, in addition to test results, that caused him to focus on Asperger's. For example, the doctor noted that the student arrived for the evaluation wearing a sports shirt and slacks, but with alligator cowboy boots. The mother stated that the child changes his clothes several times a day. Further, during the course of his testing, the student began to exhibit some ADHD like behavior. However, when the doctor gave him a stuffed toy to fondle, the student immediately calmed down and was able to re-focus. That incident, among other things caused Dr. Goldfischer to discount ADHD in favor of Asperger's.

Dr. Goldfischer's testing revealed that the student had actually regressed academically from the prior year. Whereas the Woodcock-Johnson testing conducted by the district a year earlier placed the student at 3.0 grade level, the 2006 testing had him at 2.9. Dr. Goldfischer testified that was a significant regression. And, he regressed even further in his math skills over that period of time.

While a portion of the district's IEP does relate to the student's NLD, nothing addresses his Asperger's diagnosis. The doctor noted that the IEP contains no speech and language component, an identified need of the student; 2 periods a week of OT, which is not enough; and counseling only .5 hours per week, which "is not nearly enough". Further, Dr. Goldfischer noted that the student's prior and proposed placements include within the class, students who are behaviorally disordered, who are not positive role models. Dr. Goldfischer's determination was that the student needed an intense therapeutic approach to his education. He stated that The Wolf School was a good choice

for the student since it provides speech and language, social skills, and therapeutic O.T. in an all day intensive program. Dr. Goldfischer testified that if the student returns to the proposed placement in the district, he will regress educationally and socially. If correctly placed at Wolf or a similar facility, he will have the opportunity to progress.

On cross-examination, Dr. Goldfischer testified that it was not the best practice to conduct an evaluation without speaking with the child's teachers. However, he stated that the records he reviewed provided him with a good picture of their thoughts. The teacher's comments completely supported the mother's contention that her son's symptoms went further than anxiety disorder. Dr. Goldfischer also did not review the Stiener or Kennedy reports, both of which identify the NLD, ADHD, and an anxiety disorder.

Dr. Goldfischer testified that the district's IEP was somewhat responsive to the student's needs because Asperger's Disorder encompasses NLD. The problem, he stated, is that the IEP does not go far enough. It lacks a speech and language component, specific strategies not set forth in the IEP, more occupational therapy, and sensory and socialization opportunities that are necessary. Further, he testified that .5 hours per week in counseling is "not sufficient" by anyone's standards.

Dr. Goldfischer recommended an "immersion model" of instruction that would encompass the services that the student required throughout the day with other similarly disabled students. He stated that while experts may differ in their opinions as to whether an "integration model" is a better alternative to an "immersion model", it is clear that the integration model has not worked for this student.[1]

[1] Dr. Goldfischer was referring to an "integration model" in the broadest sense, in that the student was being taught in the public school, but his 5 ½ hour per day program in a self-contained classroom hardly qualifies as an "integration"

The second witness was the student's 2nd grade regular education teacher, Jackie Ingalls. The teacher testified that when she taught the student in 2nd grade, he was "not far off" from the other students in her class. At the end of 2nd grade, the student was at an early 2nd grade level. However, she subsequently tutored the student during the summer between his 3rd and 4th grade. At that time, she felt that he had not progressed from when she had last seen him at the end of 2nd grade. He was still at an early 2nd grade level academically.

Jean Irving, the special education teacher testified about her self-contained classroom for grades 3-5. She testified that there are 10 children in it with various disabilities, including children who are emotionally disturbed and behaviorally disordered. Ms Irving testified that the student is in a self-contained classroom with the exception of pull -outs for art and music. The student attends the music class with an aide. The aide also attended the art class with the student until the student became accustomed enough to go to art alone. Ms. Irving testified that the student did not participate in the regular art instruction with the rest of the kids, but, rather was allowed to free draw or take a "sensory" walk or break.

Ms. Irving testified that she filled out Exhibit #6, a ratings scale, in response to a request from Dr. Goldfischer. The ratings scale calls for responses to a large number of questions relative to observed behavior of the student. In response to the questionnaire, Ms. Irving answered that almost all of the statements were "true" with respect to the student and that the suggested behaviors/activities were "frequently observed". The rating scale indicated, in general terms, that the student did not interact with others, did not engage in play, seemed unaware of social conventions, needed an excessive amount of

reassurances, had difficulties with transitions and/or new situations, talked about a single subject excessively and exhibited exceptional, precise speech. It was partially based upon Ms. Irving's responses to his inquiries that Dr. Goldfischer diagnosed Asperger's Disorder.

Ms Irving also admitted that the IEP team met in February 2005 for an annual review and that "due to a (the student's) lack of academic progress", the team determined to move up his 3 year evaluation.

Ms. Irving testified that the student needs significant services, but she said he has been getting them. She testified that in addition to the .5 hour counseling that the guidance counselor provides, Ms. Irving provided those services, too. She stated that the student's other required services were integrated into the student's program within her class. Although the IEP team noted a lack of progress in February 2005, Ms. Irving denies that the student did not make progress in her class. She stated that he made progress in reading, math and participation. She also noted better socialization with others from the start of the 2005 school year to the end of the school year.

Rosalie Granoff, a speech and language pathologist who is the Director of Admissions at The Wolf School testified about the program there. She stated that Wolf is a charter school that specializes in "immersion" or "inclusion" education for students with learning disabilities. The services that the student requires are provided throughout the course of the school day within the regular classroom with 7-8 other students.

Prior to enrolling the student at Wolf, Ms. Granoff and others at Wolf met with the student and reviewed the Goldfischer report, educational evaluations, IEPs, speech and language records, and records and correspondence from district personnel. She stated

that it was her opinion that the student has not made academic progress, and in fact, that he has regressed. She recounted that Wolf provides a "multi-sensory" approach to learning. It is a "hands on" approach in which the student learns through experience. She said this approach was necessary for children with non-verbal learning disabilities. Ms. Granoff identified the specifics of the Wolf curriculum and the fact that the student would fit in comfortably there due to his association with similarly situated, age appropriate peers. She also identified the services that the student had not been receiving in the district. For example, no higher order language skills were being addressed that would teach the student how to succinctly talk and get to the point. Ms. Granoff testified that The Wolf protocol is to meet at least once per week on each student in order to modify teaching methodologies as necessary. The basic Wolf components include a minimum of two teaching professionals in the class at all times, speech and language 6 times per week for 1 ½ hours and occupational therapy 7 times per week. The typical day also includes language arts, math, social studies and science. In addition, there is art and music. There are 8 students in the class, one of whom has an Asperger's diagnosis. There are no behavior disordered children at Wolf. The Wolf School is not a special education certified, institution, but is currently seeking certification. The witness testified that for the 2006-07 school year, Wolf would utilize the district's IEP with modifications. At the end of the school year, staff will draft a "plan" for the following school year. The plan is not an IEP per se because the appropriate personnel do not draft it.

Sheree Koval, the certified school psychologist testified that in the 2005-06 school year, she met with the student for once a week scheduled visits. The student also stopped by ad hoc to see her at other times during the week. She testified that the student

had significant anxiety in class, was impulsive and had difficulty maintaining peer relations. Ms. Koval testified that in her career she had provided services to approximately twenty-five students who have Asperger's Disorder. She has counseled them and observed them and feels that the subject student does not have the disorder. She stated that the student did not exhibit significant problems with peers in the classroom, he enjoyed social interaction and made eye contact with others, and that he did not exhibit repetitive aspects to his interactions. Ms Koval said the student was making slow progress commensurate with his cognitive abilities and given his learning disability and anxiety.

On cross-examination, Ms. Koval admitted that she did not possess the credentials necessary to diagnose the student's disability. She also admitted that she was only at the student's school 11/2 days per week, one of which was partially devoted to meeting with IEP teams. The witness' opinion that the student was making academic progress was based on her observations. She did not administer any test instruments, nor did she document any gains.

Gregory Stiener, MD, SW, testified that he specializes in pediatric and child psychiatry in a private practice. He alternately consults with school districts and parents. Dr. Stiener first met the subject student in the fall of 2004 in his private practice. He met with the student twice at that time. He did not administer any formal tests, but he evaluated the student and concluded that the student had ADHD, NLD and anxiety. He recommended therapy, medication and school placement. In June 2005, Dr. Stiener was contacted by the district to again evaluate the student, this time for the district. He reviewed records, met with the IEP team and with the student and the mother. In June

2005, Dr. Stiener concluded that the student had made progress from the previous fall and that his behavioral plan was working. Dr. Stiener did not change his original diagnosis of NLD and disagreed that the student has Asperger's Disorder. Dr. Stiener allowed that the student does have social impairment, but he does not have restrictive repetitive areas of interest. He explained that children with Asperger's Disorder cognitively lock in on one area of interest and speak incessantly about it. This student, he stated, focuses on topics, but the topics change hour-to-hour and day to day. Dr. Stiener feels that his ADHD contributes to the student's fixation on topics.

Dr. Stiener reviewed Dr. Goldfischer's recommendations. He testified that he thought some were very good. However, he disagreed with others and thought that they were too numerous. Dr. Stiener testified that the special education teacher had done a "great job" with the student's behavior plan. It was reward based, and he felt that the teacher continually adapted the plan to create new ways of re-enforcing the student's good behaviors. He stated that he was unaware that the child had been referred to him in June 2005 due to the district's perceived lack of progress on the part of the student. Dr. Stiener stated that the student needed the proper balance in order to achieve educational progress. He stated that too much structure would increase the student's anxiety, whereas too little would increase his ADHD. Dr. Stiener had recommended that the district revise the student's program to incorporate the Goldfischer findings and recommendations. However, the Special Education Director determined that a change in placement was not indicated. Dr. Stiener testified that The Wolf School was absolutely an appropriate placement for the student. Dr. Stiener concluded by saying that it is probable that the student will always have difficulties.

Discussion and Conclusions

There is a difference of opinion among the experts as to the student's learning disability or diagnosis. For the purposes of this case, it is irrelevant whether the student suffers from Asperger's Disorder or has a non verbal learning disability coupled with ADHD and anxiety. The issue is whether the educational program offered by the district provides the student with a free appropriate public education. FAPE has been legally defined as a course of instruction that is individually tailored to the student so as to address his disabilities and provide the student with access to a curriculum that is reasonably calculated to provide educational benefit. In the instant case, it is clear that the district was providing an individualized course of instruction with additional aids and services. However, it is not clear that the IEP afforded the student with an opportunity that was reasonably calculated to achieve educational benefit.

A review of the objective evidence demonstrates that in the period of one year from the spring of 2005 to the spring of 2006, the student regressed from an educational achievement level of 3.0 to 2.9. Further, as early as February 2005, school personnel identified a lack of progress and accelerated the student's 3 year evaluation. Notwithstanding the noted lack of progress, following the June 2005 evaluation by Dr. Stiener, the district took no significant steps to change the student's program from what it had been in the 2004-2005 school year. By way of example, no speech and language component was added, nor did the district increase counseling services for the student, who Dr. Stiener identified as having serious social and emotional issues. The school

counselor's testimony that she saw the student a few times a week on an ad hoc basis is not credible given the fact that she was only present at the school 1 ½ days per week. Despite the specified need for counseling, the IEP remained at .5 hours per week.

While the special education classroom teacher testified that the student had made progress, her responses to the Goldfischer ratings scale questionnaire belie progress or at least demonstrate that additional supports and services are necessary to the education of this child. Despite the Goldfischer recommendation, many of which Dr. Stiener supported, the district did not substantively alter the student's proposed 2006-07 IEP. It is particularly noteworthy that although the student presents with "serious social and emotional concerns", he was nevertheless placed in a self-contained classroom with students who are emotionally disturbed and behavior disordered. From a mere lay person's view, it is clear that placing this student with ED and BD children will not enhance his socialization, and more importantly, may adversely impact his socialization.

It may certainly be true that this child will never achieve normalcy, but his program must be individualized to address his specific disabilities and provide him with the necessary supports and services as will enable him to have an opportunity to access an education and to make academic progress. The district has failed to provide the student with such an IEP.

Pursuant to SPED Regulation 300.403 (c), this hearing officer is permitted to order tuition reimbursement if she finds that the parents were justified in removing their child from the district because FAPE was not made available in a timely manner prior to the child's enrollment, and that the private school placement is appropriate. Section

300.403 (c) goes on to state that the private school placement may be deemed appropriate even if it does not meet the standards required of the public school district.

In the instant case, it is clear from the evidence that the parents worked in good faith with the district in their attempts to gain a suitable program for their son. Their efforts persisted for more than one year after the district first identified the child as lacking in progress in February 2005. The district's determination in June 2006 that the student's social and emotional problems precluded educational progress with out adjusting the student's IEP to address those issues as well as the failure to address Dr. Goldfischer's findings and recommendations constitutes a denial of FAPE. The district's counsel correctly points out that The Wolf School does not have a guidance counselor on staff. However, they have a psychologist who meets with the student's teachers at least once weekly to review the student's progress and to make such adjustments to his program as are necessary. Additionally, since the student is placed with age appropriate, similarly disabled students, those needs are addressed within the class as a whole. The district's argument that The Wolf School is not the least restrictive placement is rejected by this Hearing Officer. The child has been previously placed in a special education self-contained classroom for most of the day, and he has not made academic progress in that setting. Along the educational continuum, a private school placement that provides the student with appropriate supports and services cannot be rejected as more restrictive than a special education self-contained classroom simply because the school is located outside the district, particularly where there is no evidence of a comparable school setting within the district.

Order

Based upon the evidence and testimony on the record, this Hearing officer hereby finds that the district failed to provide a free appropriate public education for this student, as a result of which, his parents were justified in removing him from the district, placing him in private school. The Hearing officer further finds that The Wolf School constitutes an appropriate placement for the student.

It is hereby ORDERED:

That the school district reimburse the parents for the cost of the student's enrollment at The Wolf School.

Entered this 17th day of November, 2006.

Maureen A. Hobson, Esq.
Impartial Due Process Hearing Officer

CERTIFICATION

I hereby certify that a copy of the within Administrative Decision was mailed postage pre-paid to Mary Ann Carroll, Esq. and Gregory A. Piccirilli, Esq. At their respective addresses of record, and that the original Decision, transcripts and evidence were hand delivered to Cranston School Department's Special Education Office on the 17th day of November, 2006.