**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRANSTON SCHOOL DISTRICT** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **C.A. No. 06-538 ML** |
| **v.** | : | |
| | : | |
| **Q.D., through his parents and next friends,** | : | |
| **Mr. And Mrs. D.** | : | |
| | : | |
| **Defendant** | : | |

**PLAINTIFF, CRANSTON SCHOOL COMMITTEE'S**
**OBJECTION TO MAGISTRATE JUDGE'S MEMORANDUM AND ORDER**
**GRANTING MOTION TO ENFORCE "STAY PUT"**

Plaintiff, through its attorney, hereby objects to Magistrate Judge David Martin's memorandum and order granting Defendants' motion to enforce a "stay put" placement pursuant to 20 U.S.C. § 1415(j).

The reasons for said motion and objection are more fully set forth in the accompanying memorandum of law.

Plaintiff,
CRANSTON SCHOOL DISTRICT,
By its Attorney,

/s/ Gregory P. Piccirilli, Esq.
SCIACCA & PICCIRILLI
121 Phenix Avenue
Cranston, Rhode Island 02920
Phone: (401) 946-4900
Fax: (401) 944-3250
gregory@splawri.com

**CERTIFICATION**

I hereby certify that on January 18, 2008, I sent a true copy of the within by electronic filing to the following:

Mary Ann Carroll, Esq.
The Law Offices of Stephen M. Robinson
155 South Main St., Suite 402
Providence, RI 02903
macarroll@smrobinsonlaw.com

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main St., Suite 402
Providence, RI 02903
vbejma@smrobinsonlaw.com

/s/ Gregory P. Piccirilli

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRANSTON SCHOOL DISTRICT** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **C.A. No. 06-538 ML** |
| **v.** | : | |
| | : | |
| **Q.D., through his parents and next friends,** | : | |
| **Mr. And Mrs. D.** | : | |
| | : | |
| **Defendant** | : | |

**PLAINTIFF, CRANSTON SCHOOL COMMITTEE'S**
**MEMORANDUM IN SUPPORT OF**
**OBJECTION TO MAGISTRATE JUDGE'S MEMORANDUM AND ORDER**
**GRANTING MOTION TO ENFORCE "STAY PUT"**

This is an objection to Magistrate Judge Martin's Memorandum and Order directing that the Cranston School District continue to pay the tuition for the Wolf School placement by the parents, for the first half of the 2007-08 school year. In his decision, the Magistrate Judge indicates that he will be issuing a decision soon, and therefore will not order payment for the full academic year. The Judge notes that "it is an open question" whether the parents would have to reimburse the school district if it is found on appeal that the unilateral placement was not appropriate.

Because Cranston disagrees that it should be obligated to pay for tuition for a unilateral placement past the academic year in which the parents initial due process claim was filed, and given that Cranston believes that it will not be allowed to seek reimbursement from the parents of the tuition if Cranston ultimately prevails on appeal, it requests that the Magistrate's order be reversed.

## I. BACKGROUND:

This case involves an appeal by the Cranston School Department of a decision and order by a due process hearing officer involving a special education complaint under the Individuals With Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*. In their initial complaint, the parents complained that the school department failed to provide their son with a Free Appropriate Public Education (FAPE) as required by the IDEA. As a result, the parents unilaterally placed their child at a private facility, the Wolf School, and sought tuition reimbursement from the school department.

As a basis for their decision to remove their child, the parents alleged that the Individual Education Plan failed to provide FAPE, because it did not provide for an immersion model of education. The parents claimed that their child was not making academic progress in the Cranston Public Schools' program, which in itself was evidence of a denial of FAPE.

The hearing officer found that the school department had failed to provide QD with FAPE, and granted the parents' request for tuition reimbursement. The basis of her decision rested largely upon the allegation that the child was not making academic progress.

Once the child was placed at the Wolf School for the academic year 2006-07, the school district reimbursed the parents for the cost of the tuition for that academic year. In the meantime, the school district attempted to convene a new IEP meeting with the parents at the Wolf School to prepare an IEP for the academic year 2007-08. As part of that process, the School District sought to have the child's academic progress reevaluated. Although the School District attempted to obtain the parents' consent in April of 2007, the parents' delay in signing the consent prevented the District from completing the evaluation until June 1, 2007. At that time, the School

District attempted to convene an IEP meeting at the Wolf School, but was unable to since the School closes earlier than the public schools of this State, and its staff is unavailable in the summer.

Once the new school year began, the IEP team did meet on October 11, 2007. At that time, the team reviewed the educational evaluation, which showed that the child's academic progress had regressed significantly in all areas. As a result of that meeting, the Cranston Public Schools sent a letter to the parents' attorney indicating a number of areas of concern regarding the child's current placement at Wolf.

First, none of the members of the team from Wolf was a certified special education teacher, in violation of federal and state law. As a result, no certified special education teacher participated in the preparation of the child's IEP. Although the child has clearly documented social and emotional needs, no social worker or psychologist was participating in the IEP meeting.

Second, the IEP in no way reflected that the student had suffered significant academic regression. Moreover, the IEP does not accurately reflect the child's current level of academic performance.

Third, since the IEP does not reflect accurate current levels of performance, the goals and objectives were nonspecific and immeasurable. Also, there was only one math goal with four objectives, even though math is one of the child's largest weaknesses, as he is currently functioning in the 2nd percentile in math fluency, the 5th percentile in math reasoning, and the 10th percentile in broad math. In the area of social communication, these goals are to be provided by a general education teacher, not a certified psychologist or social worker. In general, the goals and

objectives are either the same as they were two years earlier when the last IEP was prepared in November of 2005, or less. This is evidence of a complete lack of progress, or regression, in the child's education.

Fourth, the service delivery for the child is being provided by a non-special education certified teacher, instead of certified speech language or occupational therapists.

Finally, the child is placed in a "Regular Education/Self-Contained classroom." There is no provision for inclusion. In fact, up to two hours per day of the child's education is being provided by individual speech language or occupational therapy by non-education certified therapists. These services could be provided more properly by a special education certified teacher.

Based upon the foregoing, the Cranston Public Schools indicated to the parents that the IEP as drafted is wholly deficient for this child. Moreover, as written, all of the goals and objectives could be met by the public schools in a special education program, with certified staff. As such, the School District offered to provide the IEP as drafted, with modifications to address the deficiencies in the proposed IEP, along with appropriate service providers.

The parents have not responded to this offer. Instead, the parents have sought relief in this Court.

## II. ARGUMENT:

The parents have argued that the stay put provisions of the IDEA, 20 U.S.C. § 1415(j), require that the school district continue to pay tuition of a child, regardless of whether the IEP at issue has expired, and regardless of whether the child has been offered another program by the

public school. Such a position is not supported by the law.

Under federal law, the parents must exhaust their administrative remedies for each academic year for which they seek tuition reimbursement. See MM v. School District of Greenville County, 303 F.3d 523, 536 (4th Cir. 2002) ("When parents of a disabled child challenge multiple IEPs in court, they must have exhausted their administrative remedies for *each academic year* in which an IEP is challenged.") (emphasis in original). Failure to exhaust those administrative remedies deprives a federal court of subject matter jurisdiction over any such claims. Id.

By contrast, the case cited by the parents, Escambia County Bd. of Education v. Benton, 358 F. Supp. 2d 1112 (S.D. Ala. 2005), was not an unilateral placement case. Instead, it was a case wherein the parents alleged that the IEP was deficient and requested a functional behavior plan, along with a behavior modification plan. The hearing officer found in the parents' favor, and ordered both. That became the stay-put, and the school district was ordered to comply with that order during the appeals process.[1]

Conversely, the parents in this case have failed to bring any challenge to the school district's proposal. The parents have provided no notice of their objection to the school district's proposal, nor have they requested a due process hearing challenging the proposal as a denial of

---

[1]At oral argument, the parents cited to the case of TB v. Warwick School Dept., for the proposition that Judge Torres' had already ruled on this issue. As that case makes clear, the school district was not contesting the stay-put requirements of paying the tuition during the appeal. In fact, the decision notes that the hearing officer ordered tuition reimbursement solely for a portion of the academic year at issue; i.e. from September 21, 2000, ten days after the date of the parent's filing for a due process hearing, through March 5, 2001, the date of the hearing officer's decision. There was no issue of whether the tuition should be paid beyond that date, let alone the subsequent academic year.

FAPE. Their failure to do so deprives this Court of jurisdiction over their claim for tuition reimbursement beyond the academic year that was initially at issue in this case, namely, 2006-07.

The Magistrate ruled that the MM v. School District of Greenville County case was inapplicable because it did not deal with a stay-put provision. While not directly implicating the stay-put provisions, the Court in MM was addressing the specific issue of whether parents could seek tuition reimbursement beyond one academic year.

The Magistrate cites the case of Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195 (2nd Cir. 2002) for the proposition that the jurisdictional prerequisite that parents exhaust their administrative remedies does not apply to the stay-put provisions of the IDEA. The facts of that case differ in one important aspect from the within case.

In Murphy, the school district had prepared an IEP which would have placed the child at a public high school. The parents disagreed with the IEP, and in September of 1998, placed their child a private school. At the same time, the parents sought a due process hearing to obtain tuition reimbursement for that private placement. Id. at 198.

The parents won at the hearing officer level, and the school district appealed. Ultimately, a state hearing officer upheld that decision, and the school district remitted the tuition payment for the 1998-99 school year.

In the summer of 1999, with the new academic year approaching, the school district again offered an IEP which provided for a public school placement. Unlike the present case, however, the parents in Murphy requested another due process hearing to consider the appropriateness of the 1999-2000 IEP, and again asked for tuition reimbursement. As the Court noted:

> "While this conflict wound its way through the state administrative system and the courts, another school year loomed ahead. Defendant again proposed an IEP placing Joseph at

> Arlington High School, and plaintiffs again rejected this plan and unilaterally enrolled their son at Kildonan for the 1999-2000 school term. **Plaintiffs invoked their right to an administrative review of Arlington's 1999 IEP and requested reimbursement for Joseph's tuition for the 1999 school year**, thereby setting in motion the same process that had recently been completed with respect to the 1998 school year."

(Emphasis added). Id. at 198. The distinguishing fact in that case was that the parents had invoked an administrative due process hearing for the subsequent academic year.

Here, the parents have not invoked the due process procedures to determine whether the IEP proposed by Cranston is appropriate, or whether the Wolf School remains an appropriate placement. Had the parents so invoked that procedure, a hearing officer could have determined that the unilateral placement is no longer appropriate, and stopped the tuition reimbursement. Such a decision would then become the new "stay-put" placement. Of course, if the hearing officer found in the parents favor a second time, the tuition reimbursement would remain.

By allowing parents to continue to collect tuition reimbursement without ever challenging or reviewing subsequent IEPs, the Court creates a situation where an administrative hearing officer's decision becomes the child's effective IEP throughout the appeals process. Such a process is in direct contravention to the IDEA's requirement that a child's IEP be reviewed annually. See 20 U.S.C. § 1414(d)(4) Review and revision of IEP.:

> "(A) In general. The local educational agency shall ensure that, subject to subparagraph (B), the IEP Team--
>
> (i) reviews the child's IEP periodically, **but not less frequently than annually**, to determine whether the annual goals for the child are being achieved; and
>
> (ii) revises the IEP as appropriate to address--
>
> (I) any lack of expected progress toward the annual goals and in the general education curriculum, where appropriate;
>
> (II) the results of any reevaluation conducted under this section;
>
> (III) information about the child provided to, or by, the parents, as described in subsection (c)(1)(B);
>
> (IV) the child's anticipated needs; or
>
> (V) other matters."

(Emphasis added). By requiring a parent to seek a hearing officer review of each year's IEP before that parent can seek tuition reimbursement, the Court would ensure that statute's mandate for the annual review of the IEP is followed.

Lastly, the Magistrate Judge suggests that it is unsettled law as to whether a school district can obtain reimbursement from parents of the tuition paid if the district is successful on appeal. Such a open question is of little comfort to a school district. Aside from the practical difficulties in obtaining such a refund, the Courts do not seem inclined towards allowing such reimbursements. See Rome Sch. Comm. v. Mrs. B., 247 F.3d 29, 30 (1st Cir. 2001).

## III. CONCLUSION:

Based upon all of the foregoing, the Magistrate Judge's order granting tuition reimbursement for the first half of the 2007-08 school year should be reversed.

Plaintiff,
CRANSTON SCHOOL DISTRICT,
By its Attorney,

/s/ Gregory P. Piccirilli, Esq.
SCIACCA & PICCIRILLI
121 Phenix Avenue
Cranston, Rhode Island 02920
Phone: (401) 946-4900
Fax: (401) 944-3250
gregory@splawri.com

**CERTIFICATION**

I hereby certify that on January 18, 2008, I sent a true copy of the within by electronic filing to the following:

Mary Ann Carroll, Esq.
The Law Offices of Stephen M. Robinson
155 South Main St., Suite 402
Providence, RI 02903
macarroll@smrobinsonlaw.com

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main St., Suite 402
Providence, RI 02903
vbejma@smrobinsonlaw.com

/s/ Gregory P. Piccirilli